# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jane Cuddy, being first duly sworn, hereby depose and state as follows:

<u>Introduction and Agent Background</u>

1.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2.  I have been employed by the Drug Enforcement Administration ("DEA") since January of 2021. I am currently assigned to the New England Field Division, Task Force 5, as a Special Agent, where I investigate drug trafficking and money laundering organizations and their ties to violent crime. I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia in May of 2021, where I received specialized training in narcotics and money laundering investigations and related legal matters. In 2010, I received a Bachelor of Arts degree in Crime and Justice Studies from the University of Massachusetts, Dartmouth. In 2020, I received a master's degree in Public Policy from the University of Massachusetts, Dartmouth.

3.  I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records.

4.  Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. I am familiar with the manner in which drug traffickers (1) use telephones; (2) use electronic text messages in

lieu of or in addition to telephone calls; (3) employ coded, veiled, or slang-filled telephone conversations; and (4) utilize other means to facilitate, disguise, and conceal their illegal activities. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance.

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other DEA agents, Task Force Officers, and local police departments. This affidavit is intended to demonstrate that there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## Purpose of the Affidavit

6. As further described below, I believe there is probable cause to believe that Jason Monteiro (MONTEIRO), and others, known and unknown, committed violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), 21 U.S.C. § 843(b) (use of a communication facility in the commission of controlled substances trafficking offenses), and 21 U.S.C. § 846 (conspiracy to commit narcotics trafficking offenses) (the "Target Offenses").

7. I submit this affidavit in support of an application for the issuance of a search warrant authorizing the search of a cellular telephone assigned International Mobile Equipment Identity number ("IMEI")[1] 355323089428280 (hereinafter, "Target Telephone 1"). Records obtained from telephone provider T-Mobile state that Target Telephone 1 is assigned cellular phone number (774) 524-1371.[2] A full description of Target Telephone 1 is set forth in Attachment A, which is attached hereto and incorporated herein. Target Telephone 1 is currently in the custody

---

[1] I know from my training and experience that an IMEI number is a unique 15 digit identification number assigned to each mobile phone device.
[2] T-Mobile does not have a listed subscriber for Target Telephone 1.

of the DEA at a Massachusetts State Police facility located at 186 South Main Street, Fall River, Massachusetts.

Previous Warrants/Complaints

8. On October 10, 2024, the Honorable Jennifer C. Boal, United States Magistrate Judge, District of Massachusetts, issued a search warrant authorizing the collection of both historical and prospective location information for Target Telephone 1. (See 24-MJ-7392).

9. On October 23, 2024, the Honorable Jennifer C. Boal, United States Magistrate Judge, District of Massachusetts, issued a Criminal Complaint for MONTEIRO. (See 24-MJ-7432).

Probable Cause

10. In June 2024, I met with a known Confidential Source (the "CS").[3] During the meeting, the CS identified MONTEIRO as a supplier of multiple kilograms of cocaine operating in the area of New Bedford, Massachusetts. The CS further stated that MONTEIRO purchased 30-40 kilograms of cocaine at a time from a supplier based in Connecticut. The CS stated that the kilograms of cocaine supplied by MONTEIRO are typically packaged in small, brown boxes. The CS stated that after obtaining each large shipment of cocaine, MONTEIRO quickly sells the

---

[3] The CS became a documented DEA source during the summer of 2024. The CS began cooperating in the hopes of receiving favorable charging and sentencing decisions on state and federal drug trafficking charges. As described herein, statements made by the CS have been corroborated by recorded calls and observations of investigators. As such, I believe that the CS is a reliable source. I note that on October 22, 2024, following the stop and search of MONTEIRO described herein, the CS informed investigators that he (the CS) was in custody at the New Bedford Police Department on drug related charges. Following the call, I confirmed with Massachusetts State Police investigators that on October 22, 2024 the Defendant was detained by the New Bedford Police regarding the possession of approximately 200 grams of cocaine. The CS was subsequently released pending further investigation by the New Bedford Police. I later learned that the New Bedford Police intend to apply for a criminal complaint charging the CS with Trafficking Cocaine  Accordingly, the DEA has deactivated the CS. The CS is no longer a documented DEA source.

product, then "lays low" until the next transaction. The CS stated that he believed that MONTEIRO likely maintains a "stash" location in the North End of New Bedford. Finally, the CS stated that in a previous, unrecorded conversation on August 15, 2024, MONTEIRO told the CS that he (MONTEIRO) had "re-upped" but that he did not get as much as usual due to a price increase. I know from my training and experience, and from conversation with the CS, that by "re-upped," MONTEIRO meant that he had replenished his supply of cocaine on or about August 15, 2024.

*The September 30, 2024 Recordings*

11.     On September 30, 2024, acting at the direction of agents, the CS contacted MONTEIRO with the purpose of orchestrating a controlled purchase of kilograms of cocaine. Thereafter, the CS provided agents with two audio recordings of FaceTime calls made by MONTEIRO via Target Telephone 1 on September 30, 2024. The quality of the recordings are poor; however, during one of the recordings, the CS and MONTEIRO spoke about a mutual acquaintance living in the area of Cape Cod, Massachusetts. The CS told MONTEIRO, "So, let me know because I think dude from the Cape is going to be looking for a few." I know from my training and experience, and from conversation with the CS, that by "So, let me know," the CS was asking MONTEIRO to keep him/her (the CS) informed as to whether MONTEIRO could supply cocaine. I know further that by "looking for a few," the CS meant that the mutual acquaintance was interested in purchasing several kilograms of cocaine. Some of MONTEIRO's answers were unintelligible, however, MONTEIRO answered, "Yeah …[UI] I'm in the shop."

12.     During the second recording that was made the same day, the CS asked MONTEIRO, "Are you going to have some solids…I need a couple of solids." I know from my training and experience, and from conversation with the CS, that by "solids," the CS meant that

4

he/she (the CS) wanted solid bricks of cocaine instead of poor-quality cocaine that falls apart when the kilogram brick is unwrapped. In response, MONTEIRO stated, "Yeah…Imma check it …but I'm not gonna open it." Thereafter, the call ended.

*Subsequent Calls*

13. On the evening of October 8, 2024, the CS recorded another call with MONTEIRO on WhatsApp via Target Telephone 1. During the call, MONTEIRO told the CS, "I ended up talking to my man…He said right now, …um, if you got 10, he said, like…he could drop…to like 17 and a half." I know from my training and experience, and from conversation with the CS, that by "talking to my man," MONTEIRO meant that he (MONTEIRO) had spoken with his cocaine supplier. I know further that by, "[I]f you got 10, he said, like …he could drop…to like 17 and a half," MONTEIRO was telling the CS that if he/she (the CS) would purchase 10 kilograms of cocaine, his supplier would lower his price to $17,500 per kilogram of cocaine.

14. During an unrecorded conversation on October 17, 2024, acting at the direction of agents, the CS told MONTEIRO that he (the CS) was interested in purchasing at least 10 kilograms of cocaine. The CS stated that during the same conversation he/she (the CS) asked MONTEIRO to obtain an additional 4 kilograms of cocaine for the mutual acquaintance from Cape Cod.

*MONTEIRO Borrows the CS Vehicle*

15. The CS informed investigators that during an unrecorded conversation on Thursday, October 18, 2024, MONTEIRO told the CS that he (MONTEIRO) would soon obtain multiple kilograms of cocaine from his source in Connecticut. The CS told investigators that during the conversation MONTEIRO stated that once the source of supply was ready, the CS should join MONTEIRO for the ride to Connecticut to obtain the drugs. When the CS declined

5

the invitation, MONTEIRO asked the CS if he (MONTEIRO) could borrow the CS vehicle to make the trip. The CS agreed.

16. Following the conversation with MONTEIRO on October 18, 2024, the CS signed a DEA consent form permitting investigators to install a GPS tracker device on the CS vehicle. Thereafter, investigators installed the GPS tracker device on the CS vehicle.

17. On Monday, October 21, 2024, the CS informed investigators that MONTEIRO had taken custody of the CS vehicle. The CS told investigators that MONTEIRO stated that he/she (the CS) would be ready by Wednesday. Based upon my training and experience, and from conversation with the CS, I know that by stating that the CS would be ready by Wednesday, MONTEIRO was informing the CS that he (MONTEIRO) would obtain the kilograms of cocaine from his supplier in Connecticut for the CS by Wednesday, October 23, 2024.

*October 22, 2024*

18. On the afternoon of Tuesday October 22, 2024, GPS location information for Target Telephone 1 obtained via court order, and from the GPS tracker installed on the CS vehicle, indicated that the CS vehicle was in fact headed south from New Bedford toward Connecticut. Thereafter, investigators stationed in Connecticut located the CS vehicle stopped in a parking lot adjacent to the "Rio Salado" restaurant located at 8 Coogan Boulevard in Mystic, Connecticut.

19. The CS vehicle was parked next to a Jeep Wrangler with Maryland plates (the "Jeep Wrangler"). Investigators observed MONTEIRO sitting in the driver's seat of the CS vehicle accompanied by an unidentified male (UI-1), seated in the passenger's seat of the CS vehicle. At the same time, investigators observed a second unidentified male (UI 2) closing the rear hatch of the Jeep Wrangler. The CS vehicle and Jeep Wrangler remained stationary in the parking lot for several minutes. Eventually, investigators observed MONTEIRO operating the CS vehicle alone,

6

driving in the direction of Interstate I-95 North. Using location data, and in person surveillance, investigators followed MONTEIRO from Connecticut to Massachusetts.

20. Based upon my training and experience, conversation with the CS, location information, observations of investigators conducting surveillance, as well as MONTEIRO's immediate return to Massachusetts from Connecticut, I believed that probable cause existed to believe that MONTEIRO was transporting kilograms of cocaine from Connecticut to Massachusetts. Thereafter, I informed a Massachusetts State Trooper that I believed there was probable cause to stop the CS vehicle. At approximately 5:25 p.m., the Massachusetts State Police pulled the CS vehicle over near the mile 3 marker, eastbound on Interstate I-195 near Seekonk, Massachusetts.

21. After pulling over the CS vehicle, MONTEIRO was removed from the CS vehicle. Investigators then observed two brown boxes matching the description previously provided by the CS on the backseat of the CS vehicle. The boxes were removed from the vehicle and opened. Inside, investigators recovered four bricks, wrapped in plastic and grey duct tape, weighing approximately one kilogram each, and containing compressed, white powder. Based upon my training and experience, the packaging, color, weight, and consistency of the four bricks are consistent with kilograms of cocaine. A subsequent preliminary test confirmed that one of the bricks contains cocaine.

*The Seizure of Target Telephone 1*

22. As described herein, while conducting surveillance of MONTEIRO on October 22, 2024, agents relied in part upon location data obtained from a GPS tracker attached to the CS vehicle, as well as ping location data for Target Telephone 1 obtained pursuant to court order. Data from both devices (the GPS tracker and Target Telephone 1) demonstrate that both the CS

vehicle and Target Telephone 1 traveled from the vicinity of New Bedford, Massachusetts to Connecticut on October 22, 2024, and arrived in the vicinity of the "Rio Salado" restaurant located at 8 Coogan Boulevard in Mystic, Connecticut.at approximately 4:00 p.m.. After remaining stationary for several minutes, both devices (the GPS tracker and Target Telephone 1) traveled from Connecticut back to Massachusetts, arriving in the vicinity of Interstate I-195 near Seekonk, Massachusetts at approximately 5:25 p.m., where they remained stationary following the stop of the CS vehicle by a Massachusetts State Police Trooper.

23.     Following the stop, and after MONTEIRO was removed from the CS vehicle, Trooper Hopkins of the Massachusetts State Police seized a black iPhone 7, later identified as Target Telephone 1, from a cupholder located between the driver's seat and front passenger seat of the CS vehicle. No other cellular telephones were found either on the person of MONTEIRO or in the CS vehicle. Target Telephone 1 was then transported to a Massachusetts State Police facility located at 186 South Main Street, Fall River, Massachusetts. Thereafter, a Massachusetts State Police Trooper called the phone number used by MONTEIRO to communicate with the CS throughout the investigation, (774) 524-1371. After the call was placed, and while the phone was ringing, Target Telephone 1 displayed the phone number of the Trooper who placed the call.

The Target Offenses and Cellular Telephones Generally

24.     Based on my training and experience, I know that drug traffickers need to communicate regularly with their suppliers in order to exchange drugs and money. In my experience, the majority of such drug-related communications are carried out by cellular telephone, either by using wire (voice) or electronic (text) communications. As set forth herein, MONTEIRO has communicated with the CS regarding drug trafficking via telephone. I know that searches of cellular telephones reveal text and other electronic messages, contact numbers,

and recently called numbers, all of which are likely to show MONTEIRO's involvement in drug trafficking activities.

25. A forensic search of cellular telephones allows investigators to obtain stored information, including the telephone number assigned to the cellular telephone; call logs; address and telephone books; contact names (for which drug dealers often include lists of customers and related identifying information); and text messages, which for drug dealers often include records concerning the transportation, ordering, sale, distribution of controlled substances, and concerning proceeds of drug sales and drug trafficking. They also include evidence of user attribution, showing who used or owned the cellular telephone at the time it was seized by showing when things described in this affidavit were created, edited, or deleted, such as call logs, address and telephone books, contact names, records, saved usernames, passwords, and documents.

26. I know that Target Telephone 1 is a smartphone. I know that smartphones are handheld wireless devices used for voice and text communication as well as for accessing the internet. Smartphones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. I know further that smartphones usually contain a "call log," which records the telephone number, date, and time of calls and text messages made to and from the phone. In addition to enabling voice communications, smartphones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet, including electronic mail ("email"), Facebook Messages, and other forms of electronic

communications. Smartphones also include global positioning system ("GPS") technology for determining the location of the device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals, corroborates, or suggests who possessed or used the device as well as identify criminal accomplices.

27. Based on my knowledge, training, experience, and information provided to me by other agents and investigators, I know that electronic files or remnants of such files can be recovered from smartphone and mobile phones months or years after they have been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their telephones, they can easily transfer the data from their old telephone to their new telephone.

b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a telephone, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, an operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user generated files and storage media, internal hard drives contain electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

Evidence of the Target Offenses and Target Telephone 1

28.     For the reasons described above, and based on my training, experience, and familiarity with this investigation, I believe that MONTEIRO was actively engaged in committing the Target Offenses between on or about August 1, 2024 and on or about October 22, 2024. I further believe that, as described herein, MONTEIRO used a cellular telephone in furtherance of the Target Offenses. Specifically, I know that MONTEIRO told the CS that he (MONTEIRO) had "re-upped" his supply of cocaine on or about August 15, 2024. I know further that MONTEIRO was recorded by the CS using a cellular telephone to communicate about and further his drug trafficking activities with the CS. I know further Target Telephone 1 was found in MONTEIRO's possession on October 22, 2024. Accordingly, based upon my training and experience, and for the reasons more specifically set forth herein, I believe that there is probable cause to believe that MONTEIRO used Target Telephone 1 (as further described in Attachment A) to facilitate the Target Offenses, to communicate with drug suppliers, with customers, and with co-conspirators, and that communications, records, appointments and other information and evidence of the commission of the Target Offenses (more specifically, the items set forth in Attachment B) will be found on Target Telephone 1.

Conclusion

29.     Based on the information described above, together with my training and experience, I submit that there is probable cause to believe that within Target Telephone 1 described in Attachment A, there exist evidence, fruits, and instrumentalities of MONTEIRO's activities in furtherance of the Target Offenses. Accordingly, I respectfully request that a search warrant be issued for the search of Target Telephone 1.

30. I further request, that because the warrant will be executed in part by operating computer forensic software, and because the search will be conducted in part by a forensic examiner who will then compile the requested information at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.

I declare that the foregoing is true and correct.

*Jane Cuddy*
Jane Cuddy
Special Agent
U.S. Drug Enforcement Administration

Attested to in accordance with Fed. R. Crim. P. 4.1 by telephone this __6th__ day of November 2024

Hon. Jennifer C. Boal
United States Magistrate Judge

12